UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Craig Seifert and Jeffrey Weisen,

      Plaintiffs,

v.

Northern Tier Retail LLC
doing business as Speedway,

      Defendant.

Case No. 20-cv-62 (JNE/ECW)
FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER

Patrick W. Michenfelder, Throndset Michenfelder Law Office, LLC, appeared for Plaintiff Craig Seifert.

Daniel R. Olson and Jessica L. Kometz, Bassford Remele, PA, appeared for Defendant Northern Tier Retail LLC doing business as Speedway.

      This matter came before the Court for a bench trial on October 5, 2021, to determine whether Defendant Northern Tier Retail LLC, doing business as Speedway ("Speedway"), retaliated against, intimidated, threatened, or interfered with Plaintiff Craig Seifert based on his exercise of, or assistance with another individual's exercise of, rights protected by the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. § 12203 (proscribing such retaliation, intimidation, threats, and interference). Seifert claimed that Speedway banned him from its properties and threatened him with criminal prosecution because he investigated Speedway's alleged ADA violations. Based on the evidence

1

received at trial,[1] the Court makes the following Findings of Fact and Conclusions of Law. *See* Fed. R. Civ. P. 52(a)(1).

## FINDINGS OF FACT

**I.  Seifert's Investigations**

1. Craig Seifert investigates violations of the Americans with Disabilities Act. At trial, he testified that this investigative work has accounted for most of his employment over the past five years, and that almost all of this work has been with the Throndset Michenfelder Law Office, which represents Seifert in the instant action. Seifert has experienced difficulty finding and maintaining other employment, which Seifert attributes to his criminal record. Seifert testified that he is interested in law and at one point wanted to become a lawyer. Nevertheless, he is not a lawyer and has no formal legal training.

2. The Throndset Michenfelder Law Office served several lawsuits against Speedway in the autumn of 2019. On August 27, 2019, the firm filed suits alleging ADA violations at Speedway's properties at:

- 3240 57th Street East, Inver Grove Heights, Minnesota, Trial Ex. P-1 ¶ 19, ECF No. 83;
- 7162 East Point Douglas Road South, Cottage Grove, Minnesota, Trial Ex. P-3 ¶ 19, ECF No. 85; and
- 2445 Bloomington Avenue, Minneapolis, Minnesota, Def.'s Trial Br., ECF No. 52 at 3.

---

[1] The Court bases its findings only on the evidence received at trial. The Court does not consider evidence offered only in support of the parties' earlier motions.

On October 21, 2019, the firm filed another suit against Speedway for alleged ADA violations at 1280 West 98th Street, Bloomington, Minnesota. Trial Ex. P-5 ¶ 19, ECF No. 87.

3. Seifert acknowledges that he conducted ADA inspections at the aforementioned Cottage Grove, Minneapolis, and Bloomington Speedway properties.

4. Seifert performed an "additional investigation" at the Speedway property in Bloomington, Minnesota, on November 21, 2019. Seifert testified at trial that he did not request Speedway's permission or provide any notice to Speedway for that inspection. The Throndset Michenfelder Law Office filed an amended complaint in the case regarding that property on November 26, 2019. Trial Ex. P-7 at 19, ECF No. 89.

5. The next day, Speedway sent a letter to the Throndset Michenfelder Law Office, forbidding the lawyers and their "investigators/agents" from performing "investigations, inspections, and other discovery-related activities" at the Cottage Grove, Minneapolis, and Bloomington Speedway properties identified above. Trial Ex. D-1, ECF No. 76. The letter referred to, and was accompanied by, a Notice of Trespass Form. Seifert testified that he received the letter via email from the Throndset Michenfelder Law Office "shortly after" November 27, 2019. No evidence presented at trial suggests that Seifert ever received the letter directly from Speedway. Seifert estimated that, at the time he received the letter, he had investigated between 150 and 200 ADA claims. The Court accepts this uncontradicted testimony as true.

6. Seifert testified that he never had been involved in any kind of disturbance at a Speedway. Speedway presented no evidence to dispute this assertion. The Court

3

concludes that disruption of business activities did not motivate Speedway to restrict Seifert's access to its properties.

## II.     The Scope of the Trespass Notice

7.     To determine the scope of conduct that Speedway's letter prohibited, the Court recognizes that the two-page message on Defendant's counsel's letterhead and the accompanying Notice of Trespass Form constitute a unitary communication. The letter's second page expressly refers to the accompanying form. The Court finds that the sender transmitted the letter and the notice form together.

8.     Moreover, Seifert himself implied that he regarded the Notice of Trespass form as part of the "letter." At trial, Seifert submitted the letter and the form as a single exhibit, with no indication that they actually were separate documents. Trial Ex. P-8, ECF No. 90. In his testimony at trial, Seifert identified this exhibit as a letter stating that he would be subject to a year in jail or a $3,000 fine if he violated its instructions. He also testified that he "ended up looking [up the] statute just to see what it involved." The two-page letter did not mention potential penalties or any statute. But the Notice of Trespass Form stated the possibility of the penalties Seifert described at trial, and referred to the Minnesota criminal trespass statute (Minn. Stat. § 609.605). The Court concludes that Seifert read the trespass letter and the notice form as one communication.

9.     Furthermore, no evidence presented at trial suggests that either Seifert or anyone else had reason to construe the letter and accompanying notice form as separate documents with independent meanings. To the extent that the letter and notice form were ambiguous or apparently inconsistent as to the scope of conduct they prohibited, any

affected agent of the recipient reasonably would be expected to have sought clarification from the lawyers to whom the letter was addressed. Those lawyers, in turn, reasonably would be expected to have communicated with the letter's author to clarify any genuine questions about the letter's scope. Seifert presented no evidence that he asked questions of his employers at the Throndset Michenfelder Law Office about the letter and the accompanying notice form, or that his employers told him that the letter and notice form had meanings independent from one another. Nor did Seifert present any evidence that his employers conferred with Speedway's counsel to interpret the letter and accompanying form, or that any agent of Speedway represented that the letter and the form had separate meanings. For all of these reasons, the Court concludes that the letter and accompanying notice form constituted a single communication, and looks to the Notice of Trespass Form to determine what conduct the letter prohibited.

10.   As to the three Speedway locations specifically listed in the letter and the notice form, the trespass notice facially prohibits any entry onto those premises, regardless of whether such entry was investigative or commercial. Both the third paragraph of the letter (which lists these locations) and the Notice of Trespass Form unqualifiedly forbid entry to, and demand departure from, those locations. The form lists Speedway's purported reason for issuing the notice,[2] but this reason does not limit the circumstances under which the notice applies. In fact, the notice form states: "*ANY*

---

[2] The stated reason is: "Coming onto property for litigation, not commercial, purposes and creating actual and potential interference with normal business activities without notice or permission."

*ATTEMPT* BY YOU TO ENTER OUR PREMISES OR PROPERTY WILL BE CONSIDERED A CRIMINAL TRESPASS AND YOU WILL BE PROSECUTED TO THE FULLEST EXTENT OF THE LAW." Trial Ex. D-1 at 3, ECF No. 76 (italics added; capitalization in original). The plain text of the letter is sufficient evidence to support the Court's finding that the letter and notice form completely forbade the Throndset Michenfelder Law Office and its agents from entering the three listed Speedway properties for any reason.

11.     As to other Speedway properties, the letter's prohibition of entry is much more limited, and the Notice of Trespass Form is silent. The second paragraph of the letter states that Speedway "does not grant permission for you or your investigators/agents to be on Speedway's property *to perform such investigations, inspections, and other discovery-related activities*." Trial Ex. D-1 at 1, ECF No. 76 (emphasis added). That paragraph contains no language indicating that the prohibition extended to activities that were not "discovery-related." And the Court has no trouble concluding that, especially in the context of a lawyer's letter to other lawyers, the term "discovery-related" refers to activities related to factfinding after litigation has commenced. *See Discovery*, *Black's Law Dictionary* (11th ed. 2019) (defining "discovery" as the "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation"). Thus, the paragraph disapproves of nothing more than unconsented investigations connected to active litigation.

12.     At first glance, the third paragraph of the letter appears ambiguous as to whether Seifert was "forbidden to enter" onto *any* Speedway premises or property, or

6

whether instead this phrase—like the subsequent phrase stating that Throndset Michenfelder's agents were "demanded to depart"—is modified by the concluding phrase, "for the following three locations . . . ." But the unambiguous language of the Notice of Trespass Form confirms the latter interpretation. The meaning of the letter's third paragraph is clear: the broad ban applied only to the three Speedway properties specifically listed under that paragraph.

13.  Therefore, the text of the letter and Notice of Trespass Form shows that, at Speedway locations other than the three specifically mentioned, these documents restricted nothing more than investigations connected to active litigation. Seifert's testimony that he interpreted the letter as completely forbidding entry onto any Speedway property cannot change this conclusion.

### III. The Letter's Effect on Seifert

14.  Seifert continued to visit Speedway properties, including at least one Speedway that was listed in the trespass letter, after his attorneys informed him of the notice of trespass. Speedway's private investigator, Nicholas Foster, testified at trial that he observed Seifert travel to the Speedway located at 2445 Bloomington Avenue in Minneapolis on February 3, 2020. Foster testified that he observed Seifert using an ATM in the store, and authenticated a photograph, Trial Ex. D-6, ECF No. 81, showing Seifert at the ATM. Foster also testified that he observed Seifert patronizing a Speedway in Maple Grove, Minnesota, on February 4, 2020. On that occasion, Foster saw that Seifert "checked his oil and maybe filled up on gas."

15. Seifert testified that the letter caused him to stop investigating "other Speedway complaints," but this assertion lacks evidentiary support. Confirming his earlier deposition testimony, Seifert acknowledged at trial that he had performed ADA investigations at Speedway properties in Brooklyn Center, Minnesota, and Fridley, Minnesota, during the period covered by the Notice of Trespass Form. He claimed that there were other Speedway locations where he learned about, but did not investigate, potential violations. But he presented no evidence of the degree to which his investigative activity decreased, if at all, compared to the amount of investigation he would have performed in the absence of Speedway's trespass notice. Accordingly, the Court finds that the trespass notice did not decrease the number of ADA investigations Seifert undertook at properties not expressly mentioned in the letter.

16. While the trespass notice was in effect, Seifert also investigated Speedway properties that *were* specifically mentioned in the letter and accompanying notice form. Seifert testified that Speedway allowed him to visit the Cottage Grove Speedway to conduct an additional inspection on October 7, 2020. He did so in the presence of Speedway's attorneys and experts. That same day, he was allowed to conduct an inspection at the Speedway at 1280 West 98th Street in Bloomington, Minnesota, also in the presence of Speedway's attorneys and experts. Seifert presented no evidence to show that he would have performed additional investigations outside the presence of Speedway's counsel but for the letter and Notice of Trespass Form. The Court therefore finds that the disputed letter and accompanying notice form did not deter Seifert from investigating at Speedway properties about which litigation was ongoing.

17. Seifert testified that he read the letter as forbidding him from entering any Speedway property. The fact that Seifert continued to visit Speedway properties during the no-trespass period tends to discredit this assertion. But it does not directly contradict Seifert's sworn testimony about what he thought the letter meant, as Seifert's continued visits are consistent with him ignoring a trespass notice he believed to be invalid, or—as he claimed at trial—absentmindedly reverting to a habit of visiting Speedway stores. The Court finds that Seifert believed that Speedway intended to prohibit him from entering onto any Speedway property for any purpose.

18. Seifert testified that the letter raising the possibility of criminal prosecution "weighed heavily" on him, both because of his concerns about the effect on his ability to maintain employment and because he feared disappointing people who had offered him support and people he had tried to mentor. Confronted with evidence that he visited the Minneapolis Speedway in February 2020 in violation of the no-trespass letter, Seifert explained that he had gone there to retrieve money from the ATM "out of habit." If Seifert had refrained from entering Speedway property over the two months between the letter's issuance and that visit, the Court is unpersuaded that the mere force of an old habit would have overcome any sincerely held fear of prosecution. If, alternatively, fear of prosecution had *not* deterred Seifert from visiting Speedways during those two months, this fact undercuts Seifert's assertion that he ever had such a fear. Moreover, Seifert's own testimony is the only evidence supporting his claim of emotional injury. In contrast to his demeanor on direct examination, Seifert appeared hesitant, reluctant, and soft-spoken when questioned on cross examination about why he continued to visit

Speedway stores. For these reasons, the Court finds that Seifert's statements about the letter's effect on his conduct and emotional condition were not credible, and overstated any true concerns he may have had.

19.   No evidence indicates that police ever actually pursued or arrested Seifert because of the notice of trespass or accompanying letter. Seifert testified that he was not aware of any calls to police or prosecutions resulting from the incident in which he was observed patronizing the Minneapolis Speedway on February 3, 2020, or from his investigations at the Brooklyn Center and Fridley Speedways, during the no-trespass period. The Court concludes that the police never pursued Seifert in connection with the trespass notice.

## CONCLUSIONS OF LAW[3]

1.   A district court must consider in every case whether it has subject-matter jurisdiction, and may do so at any point in the litigation. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011); *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019). This Court lacks subject-matter jurisdiction over a plaintiff's claim unless the plaintiff can show the "irreducible constitutional minimum" of standing: an injury-in-fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A party invoking federal jurisdiction bears the burden of

---

[3] To the extent that any of the Court's findings of fact are characterized more appropriately as conclusions of law, they are incorporated by reference herein.

10

establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. 555 at 561. Standing is assessed based on the facts as they existed at the time the lawsuit was filed. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

    2.    An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). Nonetheless, an intangible injury may be concrete. *Id.* at 1549. This Court consistently has recognized that emotional distress can be sufficiently concrete to constitute an injury-in-fact. *E.g.*, *Bartl v. Enhanced Recovery Co., LLC*, No. 16-CV-252 (JNE/KMM), 2017 WL 1740152, at *2 (D. Minn. May 3, 2017) (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (holding that "generalized anxiety and stress" was sufficient to confer standing)); *Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950, at *3 (D. Minn. July 15, 2016) ("There is no doubt that emotional distress is an injury in fact . . . .").

    3.    Seifert has not met his burden to prove an injury-in-fact. Revocation of implied permission to enter a business can be an injury-in-fact, at least where a plaintiff would have continued to enter a business in the absence of such a ban. *See Cottrell v. Good Wheels*, No. CIV.08-1738RBK/KMW, 2009 WL 3208299, at *5 (D.N.J. Sept. 28, 2009) (discussing standing where plaintiffs alleged that a ban from a place of public accommodation violated the ADA's anti-retaliation provisions). But Seifert has not

established, with the degree of evidence required at trial, that the limitations on his implied permission to visit Speedway stores actually prevented even one visit to those properties. To the contrary, the evidence that he continued to visit and investigate Speedway properties after receiving the disputed letter tends to disprove any such injury.

4. Nor does the risk of prosecution for unauthorized visits to Speedway properties give rise to a cognizable injury. There is no evidence that police ever even pursued Seifert for violating the no-trespass order. The possibility of a police encounter was merely a "hypothetical" risk rather than an "actual" one, and therefore cannot constitute an injury-in-fact.

5. Seifert also has not convincingly shown that Speedway's disputed communications caused him emotional distress. The Court in no way suggests that a plaintiff's sworn testimony describing a fear of prosecution never could suffice to establish an injury-in-fact. But here, as noted above, Seifert's testimony about his claimed emotional distress was not credible, is not corroborated by other evidence, and is undermined by evidence of his continued visits to Speedway premises during the period of the no-trespass notice.

6. For these reasons, Seifert has not established that he suffered an injury-in-fact. He therefore lacks standing to maintain this suit.

## CONCLUSION

Based on the evidence at trial, the Court finds that it lacks subject matter jurisdiction over Seifert's claim, and consequently must dismiss this case without prejudice. *See Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019).

Therefore, IT IS ORDERED THAT:

1. Plaintiff Craig Seifert's Complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  November 30, 2021

                                                       s/   Joan N. Ericksen
                                                       JOAN N. ERICKSEN
                                                       United States District Judge